UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 03-32063<br>Chapter 7 |
| TERRY MANUFACTURING COMPANY, INC., | |
|     Debtor. | |
| | |
| In re | Case No. 03-32213<br>Chapter 7 |
| TERRY UNIFORM COMPANY, LLC., | |
|     Debtor. | |
| | |
| J. LESTER ALEXANDER III,<br>TRUSTEE OF TERRY<br>MANUFACTURING COMPANY, INC.<br>AND TERRY UNIFORM COMPANY,<br>LLC., | |
|     Plaintiff, | Adv. Pro. No. 04-3072- WRS |
| v. | |
| BONIFAY MANUFACTURING, INC., | |
|     Defendant. | |

### MEMORANDUM DECISION

This Adversary Proceeding came up for trial on April 18, 2005 upon the complaint of the Plaintiff and Trustee of Terry Manufacturing Company, Inc. ("TMC")



and Terry Uniform Company, LLC ("TU"), J. Lester Alexander, III, ("Trustee")[1]. The Trustee was present by counsel Brent B. Barriere, and Defendant Bonifay Manufacturing Inc. ("Bonifay"), was present by counsel Collier H. Espy. The Trustee has sought to avoid as preferential transfers pursuant to 11 U.S.C. § 547(b)[2], payments made to Bonifay, in the amount of $107,713.15. The Court having heard the testimony presented at the trial and upon review of the pleadings, admitted evidence, and memoranda submitted by both parties, finds in favor of the Trustee and against the Defendant in the amount of $107,713.15.

## I. FACTS

The Trustee has initiated this Adversary Proceeding seeking to recover $107,713.15 paid by TMC to Bonifay, alleging that a series of payments were made during the ninety (90) day preference period. The relationship between Bonifay and TMC began in 1986, when Bonifay, a sewing contractor, was approached by TMC for the purpose of producing shirts.[3] Terry Price, President of Bonifay since its formation in 1979 and during the period in question, testified that at times throughout the course of their business relationship TMC constituted thirty (30) to thirty-five (35) percent of its business. During this longstanding relationship, TMC had a history of making late payments to Bonifay. It is undisputed by both parties, that Bonifay's invoices were to

---

[1] TMC filed a voluntary Chapter 11 petition in this Court on July 7, 2003. (Case No. 03-32063, Doc. 1). Terry Uniform filed a voluntary Chapter 11 petition on July 22, 2003. (Case No. 03-32213, Doc. 1).

[2] Unless otherwise indicated, all references to Sections are to the Bankruptcy Code, 11 U.S.C. §§ 101, et. seq.

[3] At the April 18, 2005 hearing Terry Price explained that Bonifay was a sewing contractor, which received fabric and other necessary ingredients from TMC, sewed the materials, packed it and then shipped it all according to the specifications of TMC.

be paid within a thirty (30) day period, beyond which a 1 1/2 percent finance charge would be applied. At the hearing, Terry Price testified that TMC hardly ever paid within this thirty (30) day period. The number of days between the invoice date and the date of payment by TMC ranged from 138 days to 182 days. (Doc. 32; Pl.'s Ex. 2). At the hearing, the Trustee, J. Lester Alexander, III, also testified, in his position as a certified public accountant and as the Managing Principal of AEA Group, LLC.[4] The Trustee testified that as a result of his investigation of the financial records of TMC, no typical term of payment between Bonifay and TMC could be determined. Throughout the course of discovery conducted in this case, it was determined that Bonifay, by way of a letter dated January 9, 2003, attempted to prompt TMC to become "current." This letter contemplated that TMC would begin making payments on a weekly basis in the amount of $21,500. (Pl.'s Ex. III). According to the Trustee, this payment practice was carried out by TMC for approximately a two month period of time leading up to the beginning of the preference period[5]. The Trustee, again in his capacity as a certified public accountant, testified on the issue of TMC's insolvency. The Trustee testified that upon evaluation of TMC's bank records, tax returns, and proofs of claim filed in this case, that at the time of the petition filing in July of 2003, TMC's liabilities exceeded the fair value of its assets by $63.9 million.

---

[4] AEA Group, LLC, is a forensic accounting and financial consulting firm employed to assist the Trustee in the record keeping of TMC.
[5] The ninety (90) day preference period pursuant to § 547(b)(4)(A) began on or about April 7, 2003.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

### B. Discussion

Section 547 is "designed not to disturb normal debtor-creditor relationships, but to derail unusual ones which threaten to heighten the likelihood of the debtor filing for bankruptcy at all and, should that contingency materialize, to then disrupt the paramount bankruptcy policy of the equitable treatment of creditors." Molded Acoustical Products, Inc., 18 F.3d 217, 224 (3d Cir. 1994). In re Issac Leaseco, Inc., 389 F.3d 1205, 1211 (11th Cir. 2004) (noting that ensuring equal distribution among creditors is an important purpose of the preference statute); see also In re McElroy, 228 B.R. 791, 793 (Bankr. M.D. Fla. 1999) (stating that the underlying purpose of preference law is the desire to insure an equal distribution of available assets to all creditors). It is clear that the idea of equal distribution among creditors is deeply embodied within the concept and inner workings of section 547.

In this case, the *prima facie* elements of § 547(b)[6] have been sufficiently met. All of the transfers at issue were to or for the benefit of Bonifay, on account of antecedent debt. On the issue of insolvency, the Trustee, in his capacity as a certified public accountant, testified that TMC's liabilities exceeded the value of its assets by more than $63.9 million as of the date of the filing of the petition. The Trustee testified that he reached this conclusion after an extensive evaluation of the bank records and tax returns of TMC. The Trustee also testified that at the beginning of the preference period, on or about April 7, 2003, TMC's liabilities exceeded the value of its assets by approximately 58.8 million. The Court notes that in addition to the evidence presented at trial on the issue of TMC's insolvency the Trustee was entitled to the presumption of insolvency provided by § 547(f). This presumption was not rebutted by Bonifay at trial. Further, the

---

[6] Section 547(b) reads as follows:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if-
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Trustee testified that because of the financial condition of TMC, the series of payments in question allowed Bonifay to receive more than it would have received if the case had originally been filed under Chapter 7, the transfer had not been made, and if Bonifay received payments as provided by the Bankruptcy Code. The Court notes that none of these elements were disputed by Bonifay at the trial.[7]

At trial, Bonifay raised two statutory defenses to the avoidance action initiated by the Trustee, specifically, those provided by §§ 547(c)(1)[8] and (c)(2). As the Trustee sufficiently proved that the subject transfers were avoidable, the burden shifts to Bonifay to prove the elements of § 547(c)(2) by a preponderance of the evidence. See § 547(g); In re McElroy, 228 B.R. 791, 795. Bonifay must prove that the subject payments were: 1) on a debt incurred in the ordinary course of business; 2) made in the ordinary course of business of the debtor and creditor; and 3) made according to ordinary business terms. Id. (citing § 547(c)(2)). The critical issue in this case is the last element, whether the payments in question were made according to ordinary business terms. "After A.W. & Associates, Inc. it would be impossible for any court in this circuit not to consider the industry standard in determining whether a creditor met by a preponderance of evidence each element of the ordinary course of business defense." Dzikowski v. Flora-Tec Nursery Supply, Inc., (In re Tuttle's Design Build, Inc.), 2001 WL 874739, at *3 (Bankr. S.D. Fla. May 9, 2001) (citing Miller v. Florida Mining and Materials (In re A.W. &

---

[7] The Court notes that the earliest payment, which was deducted from the account of Terry Manufacturing on April 9, 2003, accordingly fell within the ninety (90) day preference period pursuant to § 547(b)(4)(A). See Barnhill v. Johnson, 503 U.S. 393, 118 L.Ed. 2d 39, 112 S.Ct. 1386 (1992); Anderson-Smith & Associates, Inc., v. Xyplex, Inc., (In re Xyplex), 188 B.R. 679, 684-685 (noting that the rule of law in this circuit is that for purposes of the 90 day preference period the "date of transfer is not the date the check is delivered, but the date the check is honored by the paying bank.") (citations omitted).

[8] The Court ruled from the bench on the affirmative defense provided by § 547(c)(1), finding a complete failure of evidence as to whether the payments constituted a "contemporaneous exchange" for new value given to the debtor.

Associates, Inc., 136 F.3d 1439, 1442 (11th Cir. 1998). "'Ordinary business terms' refers to the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C." In re A.W. & Associates, Inc., 136 F.3d 1439, 1443 (citing In re Tolona Pizza Products Corp., 3 F.3d 1029, 1033 (7th Cir. 1993)).

In this case, TMC repeatedly made late payments to Bonifay. The expert report submitted by the Trustee indicated that the number of days between the related invoice date and the date the check cleared the bank account of TMC ranged from 138 days to 182 days. (Pl's Ex. II). This range was well outside of the stipulated invoice term of 30 days. The Trustee, in his capacity as a certified public accountant, testified as to his analysis of data collected from Risk Management Association and the Credit Research Foundation, two independent research organizations used to determine industry payment norms. Data from Risk Management Association revealed that the typical range for outstanding invoices were 39 to 41 days. According to the Creditor Research Foundation, data taken from general businesses in the textile industry indicated a range of 55 days. Moreover, in this case, there is more evidence demonstrating that the payments were not made according to ordinary business terms. A letter dated January 9, 2003, urging TMC to get "current" by "Mid-May of 2003" is strong evidence that the payments here were not made according to "ordinary business terms." (Pl.'s Ex. III). A payment practice of $21,500 per week, leading right up to the beginning of the preference period cannot be considered ordinary under these circumstances. The Court acknowledges Bonifay's argument that in unique situations where the business relationship has

solidified long before the occurrence of the debtor's bankruptcy, the Court should "pause and consider carefully before further impairing a creditor whose confident, consistent, ordinary extension of trade credit has given the straitened debtor a fighting chance of sidestepping bankruptcy and continuing in business." Molded Acoustical Products, Inc., 18 F.3d 217, 225. While there is no question that Bonifay and TMC have had a longstanding business relationship, the fact remains that a payment term of $21,500 per week cannot be viewed in any way as being ordinary, consistent, or helpful to the Debtor. Accordingly, as the last element of § 547(c)(2) has not been satisfied, Bonifay has failed to meet its burden of proof as to this defense. For the reasons stated above, the Court finds in favor of the Trustee and against the Defendant in the amount of $107,713.15.

Done this 9th day of May, 2005.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Brent B. Barriere, Attorney for Plaintiff
   Collier H. Espy, Jr., Attorney for Bonifay
   J. Lester Alexander, III, Trustee
   Debtors
   Teresa R. Jacobs, Bankruptcy Administrator