## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO.  03-32063-WRS |
| COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO.  03-32213-WRS |
| COMPANY, LLC, | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| AND TERRY UNIFORM COMPANY, | ) | ADVERSARY PROCEEDING |
| LLC | ) | |
| | ) | NO.  04-03072 |
| VERSUS | ) | |
| | ) | |
| BONIFAY MANUFACTURING INC. | ) | |

### JOINT PRE-TRIAL STATEMENT

This Joint Pre-trial Statement is submitted by J. Lester Alexander, III, Trustee for Terry

Manufacturing Company, Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC ("Terry

Uniform") and Bonifay Manufacturing Inc. ("Bonifay").  Trial in this matter is "deep set" with other

adversary proceedings on April 18, 2005.

I.     **PARTIES TO THE ACTION**

**PLAINTIFF:**

J. Lester Alexander, III, Chapter 7 Trustee of Terry Manufacturing and Terry Uniform

**DEFENDANT:**

Bonifay Manufacturing, Inc.

**II    JURISDICTION**

This action is a core proceeding within the meaning of 28 U.S.C. § 157(b).  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the standard order of reference of core proceedings to this Court granted by the United States District Court for the Middle District of Alabama.

Defendant acknowledges the subject matter jurisdiction of this Court.

**III.    PENDING MOTIONS**

There are no pending motions in this proceeding.

**IV.    STIPULATED FACTS**

1) Terry Manufacturing filed its Chapter 11 bankruptcy petition on July 7, 2003.

2) During the ninety (90) day period preceding the filing of Terry Manufacturing's Chapter 11 Petition, Terry Manufacturing made payments to Bonifay..

3)  Bonifay received payment in the amount of $22,758.00 from Terry Manufacturing on April 3, 2003, in satisfaction of Bonifay's invoices dated October 17, 2002, October 22, 2002, October 23, 2002, October 24, 2002, October 28, 2002 and October 29, 2002.  Terry Manufacturing's check in the amount of $22,758.00 cleared its account on April 9, 2003.

4) Bonifay received payment in the amount of $22,689.54 from Terry Manufacturing in satisfaction of Bonifay's invoices dated October 29, 2002, October 31, 2002, November 7, 2002, November 8, 2002, November 13, 2002 and November 18, 2002. Terry Manufacturing's check in the amount of $22,689.54 cleared its account on April 29, 2003.

5) Bonifay received payment in the amount of $10,714.92 from Terry Manufacturing in satisfaction of Bonifay's invoices dated November 18, 2002, November 20, 2002, November 21, 2002 and December 5, 2002. Terry Manufacturing's check in the amount of $10.714.92 cleared its account on May 8, 2003.

6) Bonifay received payment in the amount of $21,007.69 from Terry Manufacturing in satisfaction of Bonifay's invoices dated December 4, 2002, December 9, 2002, December 10, 2002, December 12, 2002 and December 17, 2002. Terry Manufacturing's check in the amount of $21,007.69 cleared its account on June 14, 2003.

7) Bonifay received payment in the amount of $10,543.00 from Terry Manufacturing in satisfaction of Bonifay's invoices dated December 17, 2002, December 18, 2002 and January 8, 2003. Terry Manufacturing's check in the amount of $10,543.00 cleared its account on May 30, 2003.

8) Bonifay received payment in the amount of $20,000.00 from Terry Manufacturing in satisfaction of Bonifay's invoices dated January 8, 2003, January 9, 2003, January 15, 2003, January 16, 2003, January 21, 2003 and January 22, 2003. Terry Manufacturing's check in the amount of $20,000.00 cleared its account on June 9, 2003.

9) Check Number 71687 in the amount of $20,211.70 was made payable to Bonifay by Terry Manufacturing, but endorsed and deposited by Darwood Manufacturing. Bonifay did not receive any value for Check Number 71687.

## V.    STATEMENT OF FACTS

**PLAINTIFF**:

1) On April 9, 2003, Check Number 71427, drawn on the account of Terry Manufacturing at First Bank and made payable to Bonifay from Terry Manufacturing, was deducted from the account of Terry Manufacturing. Check Number 71427 was given in payment of Bonifay invoices dated October 17, 2002, October 22, 2002, October 23, 2002, October 24, 2002, October 28, 2002 and October 29, 2002.

2) On April 29, 2003, Check Number 71631, drawn on the account of Terry Manufacturing at First Bank and made payable to Bonifay from Terry Manufacturing, was deducted from the account of Terry Manufacturing. Check Number 71631 was given in payment of Bonifay invoices dated October 29, 2002, October 31, 2002, November 7, 2002, November 8, 2002, November 13, 2002 and November 18, 2002.

3) On May 8, 2003, Check Number 71790, drawn on the account of Terry Manufacturing at First Bank and made payable to Bonifay from Terry Manufacturing, was deducted from the account of Terry Manufacturing. Check Number 71790 was given in payment of the Bonifay invoices dated November 18, 2002, November 20, 2002, November 21, 2002 and December 5, 2002.

4) On May 30, 2003, Check Number 71998, drawn on the account of Terry Manufacturing at First Bank and made payable to Bonifay from Terry Manufacturing, was deducted from the account of

Terry Manufacturing. Check Number 71998 was given in payment of the Bonifay invoices dated December 17, 2002, December 18, 2002 and January 8, 2003.

5) On June 9, 2003, Check Number 72142, drawn on the account of Terry Manufacturing at First Bank and made payable to Bonifay from Terry Manufacturing, was deducted from the account of Terry Manufacturing. Check Number 72142 was given in payment of the invoices listed in the plaintiff's Stipulated Facts section of this Statement.

6) On June 14, 2003, Check Number 71829, drawn on the account of Terry Manufacturing at First Bank and made payable to Bonifay from Terry Manufacturing, was deducted from the account of Terry Manufacturing. Check Number 71829 was given in payment of the Bonifay invoices dated January 8, 2003, January 9, 2003, January 15, 2003, January 16, 2003, January 21, 2003 and January 22, 2003.

7) At the time of the payments from Terry Manufacturing to Bonifay, Terry Manufacturing was insolvent. 11 U.S.C. § 547(b)(1)(3). The Trustee is entitled to the benefit of the statutory presumption that Terry Manufacturing was insolvent during the ninety (90) days preceding the filing of its voluntary petition under Chapter 11. 11 U.S.C. § 547(f). In fact, as of December 31, 2002, Terry Manufacturing's debts exceeded its liability by $58.8 million. By the time of the filing of its Chapter 11 petition on July 7, 2003, Terry Manufacturing's debts exceeded the fair value of its assets by $63.9 million.

8) The payments listed in Numbers 3 through 8 in the plaintiff's Stipulated Facts section were all deducted from Terry Manufacturing's bank account during the ninety days preceding Terry Manufacturing's filing of its Chapter 11 bankruptcy petition on July 7, 2003. 11 U.S.C. § 547(b)(4)(A).

9) By receipt of the payments listed in Numbers 3 through 8 in the plaintiff's Stipulated Facts

section, Bonifay received more than it would have received if this case had originally been filed pursuant to Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 547(b)(5)(A). The estate of Terry Manufacturing was hopelessly insolvent as of the Chapter 11 filing. If filed as a Chapter 7 case, there would have been no or virtually no distribution to unsecured creditors.

10) By receipt of the payments listed in Numbers 3 through 8 in the plaintiff's Stipulated Facts section, Bonifay received more than it would have received if the transfers listed above had not been made. 11 U.S.C. § 547(b)(5)(B).

11) The payments made to Bonifay by Terry Manufacturing were not made to be and were not contemporaneous exchanges for new value given to Terry Manufacturing. 11 U.S.C. § 547(c)(1)(A), (B).

12) The payments made to Bonifay by Terry Manufacturing were not made in the ordinary course of business between Terry Manufacturing and Bonifay and were not made according to ordinary business terms. 11 U.S.C. § 547(c)(2)(B), (C).

13) All payments made during the preference period were outside of the terms indicated on Bonifay's invoices. The invoices issued by Bonifay each specified a payment term of thirty (30) days. None of the payments were made within that period. The number of days between the invoice date and the date the check was deducted from Terry Manufacturing's bank account ranged from 138 days to 182 days. Payments in the textile industry are made between 39 and 41 days after the invoice date. During the second quarter of 2003 the median number of days of sales outstanding in the Apparel and Other Finished Products segment of the textile industry was 55 days.

14) Bonifay did not provide Terry Manufacturing with new value subsequent to the payments made by Terry Manufacturing to Bonifay during the 90 days prior to Terry Manufacturing's Chapter 11 filing. 11 U.S.C. § 547(c)(4).

**DEFENDANT:**

1) The payment from Terry Manufacturing to Bonifay in the amount of $22,758.00 was received by Bonifay on April 3, 2003, and deposited in the account of Bonifay on April 7, 2003.

2) Due to the long-standing business relationship between Terry Manufacturing and Bonifay which began in 1986, and extended for more than 17 years before filing by Terry Manufacturing of its bankruptcy petition, Bonifay regularly accepted payments from Terry Manufacturing on goods shipped and invoiced more than 60 days beyond invoice date.

3) Again based upon the long-standing relationship between Bonifay and Terry Manufacturing, Bonifay avers it was in its ordinary course of business to regularly accept payment of invoices from Terry Manufacturing for as much as 120 up to 180 days beyond invoice date.

4) Within the preference period Bonifay continued to ship goods produced for Terry Manufacturing, and submitted invoices which are still outstanding and owed in the amount of $63,857.71; and Bonifay asserts these goods shipped and produced for which payment was not received constitute new value.

5) Bonifay contends the payments made by Terry Manufacturing were intended to be and were contemporaneous exchange for new value based upon the ongoing receipt and completion of orders presented by Terry Manufacturing.

6) Bonifay produced, shipped and invoiced Terry Manufacturing for goods manufactured within

90 days of filing by Terry Manufacturing of its Petition summarized as follows:

### INVOICES FOR GOODS SHIPPED FROM 4/8/03 - 7/7/03

| INVOICE NO. | INVOICE DATE | AMOUNT |
|---|---|---|
| 18945 | 4/9/03 | $7,150.34 |
| 18956 | 4/16/03 | $3,492.56 |
| 18958 | 4/17/03 | $2,611.46 |
| 18964 | 4/23/03 | $3,999.30 |
| 18970 | 4/28/03 | $1,708.00 |
| 18973 | 5/2/03 | $6,951.55 |
| 18979 | 5/7/03 | $1,583.94 |
| 18986 | 5/12/03 | $1,965.51 |
| 18989 | 5/14/03 | $   42.00 |
| 18996 | 5/20/03 | $1,691.99 |
| 18999 | 5/22/03 | $1,465.81 |
| 19017 | 6/3/03 | $1,358.80 |
| 19019 | 6/4/03 | $7,159.59 |
| 19021 | 6/5/03 | $1,123.50 |
| 19027 | 6/10/03 | $5,217.88 |
| 19030 | 6/11/03 | $  782.84 |
| 19034 | 6/13/03 | $4,034.16 |
| 19039 | 6/17/03 | $4,841.36 |
| 19044 | 6/20/03 | $1,277.09 |
| 19047 | 6/24/03 | $3,681.97 |
| 19054 | 6/27/03 | $  453.75 |
| 19058 | 7/1/03 | $1,264.31 |
| | | $63,857.71 |

7) The total outstanding amount of unpaid invoices submitted by Bonifay to Terry Manufacturing

is $115,482.52.

## VI.    STATEMENT OF LAW

**PLAINTIFF:**

1) The funds for Check Number 71427 were withdrawn from Terry Manufacturing's bank account on April 9, 2003, which is within the 90 days preceding Terry Manufacturing's filing of its Chapter 11 bankruptcy petition. For the purposes of 11 U.S.C. § 547, the date of the transfer to a preference defendants is the deemed to be the date that the check is honored by the debtor's bank. *Barnhill v. Johnson*, 503 U.S. 393, 401, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

2) At the time of the payments from Terry Manufacturing to Bonifay, Terry Manufacturing was insolvent. 11 U.S.C. § 547(b)(1)(3). The Trustee is entitled to the benefit of the statutory presumption that Terry Manufacturing was insolvent during the ninety (90) days preceding the filing of its voluntary petition under Chapter 11. 11 U.S.C. § 547(f). In fact, as of December 31, 2002, Terry Manufacturing's debts exceeded its liability by $58.8 million. By the time of the filing of its Chapter 11 petition on July 7, 2003, Terry Manufacturing's debts exceeded the fair value of its assets by $63.9 million.

3) The payments listed in Numbers 3 through 8 in the plaintiff's Stipulated Facts section were all deducted from Terry Manufacturing's bank account during the ninety days preceding Terry Manufacturing's filing of its Chapter 11 bankruptcy petition on July 7, 2003. 11 U.S.C. § 547(b)(4)(A).

4) By receipt of the payments listed in Numbers 3 through 8 in the plaintiff's Statement of Facts, Bonifay received more than it would have received if this case had originally been filed pursuant to Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 547(b)(5)(A). The estate of Terry Manufacturing was hopelessly insolvent as of the Chapter 11 filing. If filed as a Chapter 7 case, there would have been no or virtually no distribution to unsecured creditors.

5) By receipt of the payments listed in Numbers 2 through 7 in the plaintiff's Statement of Facts, Bonifay received more than it would have received if the transfers listed above had not been made. 11 U.S.C. § 547(b)(5)(B).

6) "New value" is defined by 11 U.S.C. § 547(a)(2) as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including the proceeds of such property, but does not include an obligation substituted for an existing obligation."

7) Bonifay has the burden of proving all required elements of the affirmative "new value defense" provided in 11 U.S.C. § 547(c)(1). *In re Jet Florida Systems, Inc.*, 862 F.2d 1555, 1558 (11th Cir. 1988). The payments made to Bonifay by Terry Manufacturing were not made to be and were not contemporaneous exchanges for new value given to Terry Manufacturing. 11 U.S.C. § 547(c)(1)(A), (B).

8) The "new value defense" provided in 11 U.S.C. § 547(c)(1) has three basic elements which must be proved by Bonifay:

    a) the transferee must have extended new value to the debtor in exchange for the payment or transfer;

    b) the exchange of payment for new value must have been intended by the debtor and the transferee to be contemporaneous; and

    c) the exchange must have been in fact substantially contemporaneous.

*In re Arrow Air, Inc.*, 940 F.2d 1463, 1465 (11th Cir. 1991); *In re Martin*, 184 B.R. 985 (M.D. Ala. 1995).

9) Bonifay "must do more than simply show that some new value was given the debtor." Bonifay must prove with *"specificity* the measure of new value given the debtor in the exchange transaction he seeks to protect– and the challenged payment is protected *only* to the extent of the specific measure of new value shown." *Arrow Air*, 940 F.2d at 1466.

10) Bonifay must prove by a preponderance of the evidence the affirmative defense outlined in 11 U.S.C. § 547(c)(2) that payments made by Terry Manufacturing were made in the ordinary course of business. *In re Jet Florida Systems, Inc.*, 861 F.2d 1555, 1560 (11th Cir. 1988); *In re C.J. Spirits, Inc.*, 238 B.R. 889, 892 (Bankr. M.D. Fla. 1999). The payments made to Bonifay by Terry Manufacturing were not made in the ordinary course of business between Terry Manufacturing and Bonifay and were not made according to ordinary business terms. 11 U.S.C. § 547(c)(2)(B), (C).

11) This Court must "examine industry standards" in the textile industry as well as the history of business between Terry Manufacturing and Bonifay when assessing Bonifay's ordinary course of business defense under section 547(c)(2)(C). *In re A.W. & Assoc., Inc.*, 136 F.3d 1439, 1442-43 (11th Cir. 1998). All payments made during the preference period were outside of the terms indicated on Bonifay's invoices. The number of days between the invoice date and the date the check was deducted from Terry Manufacturing's bank account ranged from 138 days to 182 days. Payments in the textile industry are made between 39 and 41 days after the invoice date. During the second quarter of 2003 the median number of days of sales outstanding in the Apparel and Other Finished Products segment of the textile industry was 55 days.

12) The "new value defense" outlined in 11 U.S.C. § 547(c)(4) has three elements which must be proved by Bonifay: (1) Bonifay must have extended the new value after receiving the challenged payments;

(2) the new value must have been unsecured; and (3) the new value must remain unpaid. *Jet Florida System*, 861 F.2d at 1083. Bonifay did not provide Terry Manufacturing with new value subsequent to the payments made by Terry Manufacturing to Bonifay during the 90 days prior to Terry Manufacturing's Chapter 11 filing. 11 U.S.C. § 547(c)(4).

**DEFENDANT:**

1) The purpose of "new value" defense under 11 U.S.C. § 547(c)(1) is to protect transactions that do not diminish bankruptcy estate. *In re Martin*, 184 B.R. 985 (M.D.Ala. 1995) aff'd, 101 F. 3d 708 (11th Cir. 1996).

2) By Bonifay's continuing to produce and ship to Terry Manufacturing in the ordinary course of business within 90 days before filing of its petition goods such shipments actually enhanced the work of the debtor's estate. *In re Adelphia Automatic Sprinkler Co.,* 184 B.R. 224 (E.D. Pa. 1995). Determination of where the parties intended transaction to be contemporaneous exchange for purposes of 11 U.S.C. § 547(c) is a question of fact in each case; and there is no objective standards for determining when exchange is in fact substantially contemporaneous and the Court is required to consider all surrounding facts. *In re Quade,* 108 B.R. 681 (Bankr. N.D. Iowa 1989).

3) Ordinary business exception to trustee's avoidance powers protects debtor's payments that did not result from unusual or extraordinary debt collection practices. *In re L. Bee Furniture Co., Inc.,* 203 B.R. 778 (Bankr. M.D. Fla. 1996).

NO:99523376.1                                        -12-

4) Showing that transaction between debtor and creditor is normal for the purposes of 11 U.S.C. § 547(c)(2)(B) is required to assure that creditors did nothing abnormal to gain advantage over other creditors. *In re Daedalean, Inc.,* 193 B.R. 204 (Bankr. D. Md. 1996).

5) Duration of parties relationship is logically pertinent to touchstone of statutory policies undergirding § 547(c)(2). *In re Molded Acoustical Products, Inc.,* 18 F. 3d 217 (3d Cir. 1994).

6) Among factors courts consider in determining whether transfers are ordinary in relation to past practices under 11 U.S.C. § 547 (c)(2) are: (1) length of time parties were engaged in transactions at issue; (2) whether amount or form of tender differed from past practices; (3) whether debtor or creditor engaged in any unusual collection or payment activity; and (4) whether creditor took advantage of debtor's deteriorating financial condition. *In re Grand Chevrolet , Inc.,* 25 F. 3d 728 (9th Cir. 1994).

7) In assessing issue of whether payments were made in the ordinary course of business, inquiry is focused upon debtor's internal operations and circumstances of transaction in question, not industry standards, and four (4) factors are considered: prior course of dealings between parties; amount of payment; timing of payment; and circumstances surrounding payments. *In re A. W. & Associates, Inc.,* 196 B.R. 900, (Bankr. N.D. Fla. 1996).

8) In determining whether transfers were made in normal course of business between parties for purposes of exception to preference avoidance under 11 U.S.C. § 547(c)(2)(B), focus of inquiry is subjective; such determination is particularly factual and factors normally considered include (1) length of time parties have engaged in type of dealing at issue, (2) whether subject transfer was in amount more than usually paid, (3) whether payments were tendered in manner different from previous payments, (4) whether there appears any unusual action by either debtor or creditor to collect or pay on debt, and (5) whether

creditor did anything to gain advantage in light of debtor's deteriorating financial condition. *In re R.M.L., Inc.,* 195 B.R. 602 (Bankr. M.D. Pa. 1996).

9) Even though business transactions of debtor are "irregular", they are considered "ordinary" within 11 U.S.C. §547(c)(2) if consistent with course of dealings between parties. *In re Kiddy Toys, Inc.,* 178 B.R. 928 (Bankr. D.P.R. 1994).

10) 11 U.S.C. § 547(c)(2) does not define "ordinary course of business" so court must focus on conduct of parties involved, i.e. "ordinary" contemplates what is ordinary with respect to parties. Transferee needs to demonstrate some consistency with other business transactions between debtor and transferee. *In re Gardner Matthews Plantation Co.,* 118 B.R. 384 (Bankr. D.S.C. 1989).

11) For purposes of ordinary business exception to trustee's avoidance powers, there is presumption that late payments are outside ordinary course of business. However, presumption may be overcome by showing that late payments were in the ordinary course of parties' business. *In re L. Bee Furniture Co., Inc., supra.*

12) Late payments may fall within exception if prior course of conduct between parties demonstrates late payments were ordinarily made. *In re Lan Yik Foods Corp.,* 185 B.R. 103 (Bankr. E.D. N.Y. 1995); *In re White,* 64 B.R. 843 (Bankr. E.D. Tenn. 1986).

13) For purposes of 11 U.S.C. § 547(c)(2) action, payment made 81 days after invoice date was made in the ordinary course of business between paper supplier and Chapter 11 debtor where payment was consistent with parties prior course of dealings since debtor's payments to supplier were ordinarily made between 64 and 148 days from invoice date. *In re Graphic Productions Corp.,* 176 B.R. 65 (Bankr. S.D. Fla. 1994).

14) Ordinary course of business exception under 11 U.S.C. § 547(c)(2)(B) is satisfied even though debtor's payments during preference period, which averaged 110 days after invoicing, where submitted payment history demonstrated practice of substantially late payments ranging from 53 to 142 days after invoicing, and there was no evidence creditor had ever commenced legal proceedings or suspended trading with debtor because of payment delays during parties 9-year business relationship. *In re Lan Yik Foods Corp., supra.*

## I.    WITNESS LIST

**PLAINTIFF:**

Plaintiff submitted a witness list in its Pre-trial Disclosures submitted in compliance with this Court's Scheduling Order.  Further, plaintiff certifies it served a copy of J. Lester Alexander's expert report on defendant's counsel and in accordance with the Scheduling Order.

Plaintiff will call the following witnesses:

J. Lester Alexander, III
AEA Group, LLC
2 North 20th Street, Suite 800
Birmingham AL 35203

Mr. Alexander will be called to testify as a fact witness and as an expert witness to opine with respect to all opinions expressed in his expert report, including but not limited to, the solvency of Terry Manufacturing and the ordinary course of business as between Terry Manufacturing and Bonifay as well as in the textile industry.  Mr. Alexander's expert report was timely prepared and served upon counsel for Bonifay consistent with Rule 7026 of the Federal Bankruptcy Rules.

Plaintiff may call the following witnesses:

J. Stephen Alexander
AEA Group, LLC
2 North 20th Street, Suite 800
Birmingham AL 35203

Mr. Alexander may be called to testify to issues related to the solvency of Terry Manufacturing and the ordinary course of business between Terry Manufacturing and Bonifay.

William Long
AEA Group, LLC
2 North 20th Street, Suite 800
Birmingham AL 35203

Mr. Long may be called to testify to issues related to the solvency of Terry Manufacturing and the ordinary course of business between Terry Manufacturing and Bonifay.

**DEFENDANT:**

Defendant submitted a witness list in its Pre-Trial Disclosure submitted in compliance with

this Court's Scheduling Order.

Defendant will call the following witnesses:

Terry Price
c/o BONIFAY MANUFACTURING, INC.
P.O. Box 338
Bonifay, FL   32425

Kim Williams
c/o BONIFAY MANUFACTURING, INC.
P.O. Box 338
Bonifay, FL   32425

Jay Bonck
c/o TWO LANE SHIRT COMPANY
New Orleans, LA

## VIII.  <u>DEPOSITION TESTIMONY</u>

**PLAINTIFF:**

Plaintiff does not intend to submit deposition designations because there were no depositions taken in this proceeding.

**DEFENDANT:**

None.

## IX.  <u>EXHIBIT LIST</u>

**PLAINTIFF:**

Plaintiff's Exhibit List is attached as Exhibit A.

**DEFENDANT:**

Defendant's Exhibit List is attached as Exhibit B and would include bates labeled documents Bonifay 0001-0832.

## X.  <u>OBJECTIONS TO THE EXHIBITS LIST</u>

**PLAINTIFF:**

**DEFENDANT:**

## XI.  <u>DEMONSTRATIVE EXHIBIT LIST</u>

**PLAINTIFF:**

Plaintiff may use demonstrative exhibits detailing the date and amount of payments made by Terry Manufacturing to Bonifay.

**DEFENDANT:**

Defendant may use demonstrative exhibits detailing the date and amount of payments made by Terry Manufacturing to Bonifay within one year or more before filing of its petition.

## XII.    AMENDMENT TO PLEADINGS

**PLAINTIFF:**

Plaintiff does not intend to amend any pleadings.

**DEFENDANT:**

Defendant does not intent to amend any pleadings.

## XIII.    ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE ACTION

A bench trial in this matter is scheduled to commence on April 18, 2005. It is "deep set" with other adversaries. The trial should be no longer than one-half day. The Pre-Trial Conference is scheduled to be held telephonically on Tuesday, April 5, 2005 at 1:30 p.m.

The Defendant, Bonifay Manufacturing, Inc., reserves the right to object by March 28, 2005, to the Plaintiff' proffer or Mr. J. Lester Alexander, III, as an expert witness. Also, the Defendant, Bonifay Manufacturing, Inc., reserves all rights with respect to the disclosure of witness exhibits not previously produced by the Trustee.

The Trustee reserves all rights with respect to timely disclosure of witnesses and exhibits

NO:99523376.1                              -18-

and admissions thereof. The Trustee also specifically reserves any objections regarding the testimony of Defendant's witnesses because Defendant did not describe with particularity the nature of the testimony of its witnesses.  Defendant did not submit an expert report pursuant to Rule 7026 of the Federal Bankruptcy Rules and Plaintiff will object to any expert testimony from Defendant's witnesses.

The possibility of settlement of this proceeding was considered.

Respectfully submitted this 28th day of March, 2005.

PHELPS DUNBAR LLP

By:    /s/  Catherine E. Lasky
Brent B. Barriere, T.A.  (La. Bar No. 2818)
David L. Patrón (La. Bar No. 22566)
Katherine Determan (La. Bar No. 25381)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

- and -

   /s/  Collier H. Espy, Jr.
Collier H. Espy, Jr.
Espy, Metcalf & Poston, P.C.
P.O. Drawer 6504
Dothan, Alabama 36302-6504

NO:99523376.1                    -19-

**ATTORNEY FOR BONIFAY**
**MANUFACTURING, INC.**

_____
UNITED STATES BANKRUPTCY JUDGE