UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING COMPANY, INC., | ) ) | CASE NO.: 03-32063-WRS |
| | ) ) | CHAPTER 7 |
| Debtor. | ) | |
| IN RE: | ) ) | |
| TERRY UNIFORM COMPANY, LLC, | ) ) ) | CASE NO.: 03-32213-WRS |
| | ) ) | CHAPTER 7 |
| Debtor. | ) | |
| J. LESTER ALEXANDER, III, Etc., | ) ) ) | |
| Appellee, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. |
| BONIFAY MANUFACTURING, INC., | ) ) ) | 2:05cv730-T |
| Appellant. | ) ) | |

Appeal from the United States Bankruptcy Court for the
Middle District of Alabama
AP No.: 04-3072-WRS

**BRIEF OF APPELLANT, BONIFAY MANUFACTURING, INC.**

C.H. Espy, Jr. (ESP004)
ESPY, METCALF & POSTON, P.C.
Post Office Drawer 6504
Dothan, Alabama 36302-6405
Telephone:   (334) 793-6288
Fax:              (334) 712-1617

## TABLE OF CONTENTS

Table of Authorities ............................................................................... ii

Statement of the Issue ............................................................................ 1

Statement of the Case ............................................................................ 2

Statement of the Facts ............................................................................ 3

Argument and Citations of Authority ..................................................... 6

Conclusion ............................................................................................. 11

Certificate of Service ............................................................................. 13

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                       <u>PAGE</u>

<u>Barnhill v. Johnson</u>, 503 U.S. 401 (1992)……………………………………………….6

<u>In re A.W. & Assoc.</u>, 136 F.3d. 1439 (11th Cir. 1998)……………………………..6, 7, 8

<u>In re Craig Oil Co.</u>, 785 F.2d. 1563 (11th Cir. 1986)………………………………….....6

<u>In re Issac Leaseco, Inc.</u>, 389 F.3d 1205 (11th Cir. 2004)……………………………..6-7

<u>In re L Bee Furniture Co.</u>, 227 B.R. 902 (DC MD Fl. 1996)…………………………....9

<u>In re Moulded Acoustical Prods.</u>, 18 F.3d. 217 (3d Cir. 1994)………………………..9

<u>In re Tolona Pizza Prods. Corp.</u>, 3 F.3d. 1029 (7th Cir. 1993)………………………..7

<u>STATUTES</u>

11 U.S.C. § 547(b)…………………………………………………………………..2, 6

11 U.S.C. § 547(c)(2)………………………………………………………1, 2, 6, 7, 8, 11

<u>LEGISLATIVE HISTORY</u>

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373-74 (1977)………………………………6

## STATEMENT OF THE ISSUE

Whether payments from Terry Manufacturing, Inc. (hereinafter "TMI") to Bonifay Manufacturing, Inc. (hereinafter "Defendant/Appellant") made within ninety (90) days of TMI's filing of bankruptcy for goods previously shipped and invoiced by Defendant/Appellant are preferential payments; or, in the alternative, whether such payments can be excepted from the trustee's avoidance powers under 11 U.S.C. § 547 (c)(2) as payments made in the ordinary course of business.

1

## STATEMENT OF THE CASE

The appeal before this Honorable Court is one associated with a complaint initiated by the Trustee/Appellee as to payments by TMI (the debtor) to Defendant/Appellant. Basically, the Trustee/Appellee asserted that six payments made to Defendant/Appellant during the ninety (90) days preceding TMI's filing of bankruptcy should be avoided as preferential pursuant to 11 U.S.C. §547(b). Defendant/Appellant conceded that the payments at issue were made within the ninety (90) day preference period; but Defendant/Appellant strenuously argued that these payments were made in the ordinary course of business between TMI and Defendant/Appellant, and, therefore, were immune from the Trustee's avoidance powers pursuant to 11 U.S.C. §547(c)(2).

After a 1-day trial in the Bankruptcy Court on April 18, 2005, the Bankruptcy Court determined the six payments at issue did not fall within the ordinary course of business exception of 11 U.S.C. §547(c)(2). The Bankruptcy Court entered judgment in favor of the Trustee/Appellee and ordered the sum of the six payments be returned to the Trustee/Appellee. Thereafter, Notice of Appeal was timely filed.

## STATEMENT OF THE FACTS

Terry Manufacturing, Inc. (hereinafter "TMI") filed a Chapter 11 bankruptcy petition on July 7, 2003. Trustee/Appellee was appointed as its Chapter 11 Trustee on July 11, 2003. Terry Uniform filed a voluntary Chapter 11 petition on July 22, 2003. Trustee/Appellee was then appointed as Trustee of Terry Uniform.

On August 2, 2004, Trustee/Appellee filed a complaint against Bonifay Manufacturing, Inc. (hereinafter "Defendant/Appellant") for payments it received from TMI during the 90-day period preceding the filing of TMI's Chapter 11 petition. These check payments received by Defendant/Appellant are as follows:

- $22,758.00 received on April 3, 2003, (cleared on April 9, 2003) in satisfaction of Defendant/Appellant's invoices dated October 17, 2002, October 22, 2002, October 23, 2002, October 24, 2002, October 28, 2002, and October 29, 2002.

- $22,689.54 received on or about April 22, 2003, (cleared on April 29, 2003) in satisfaction Defendant/Appellant's invoices dated October 29, 2002, October 31, 2002, November 7, 2002, November 8, 2002, November 13, 2002, and November 18, 2002.

- $10,714.92 received on or about May 2, 2003 (cleared on May 8, 2003) in satisfaction of Defendant/Appellant's invoices dated November 18, 2002, November 20, 2002, November 21, 2002, and December 5, 2002.

- $21,007.69 received on or about June 8, 2003 (cleared on June 14, 2003) in satisfaction of Defendant/Appellant's invoices dated December 4, December 9, 2002, December 10, 2002, December 12, 2002, and December 17, 2002.

3

- $10,543.00 received on or about May 24, 2003 (cleared on May 30, 2003) in satisfaction of Defendant/Appellant's invoices dated December 17, 2002, December 18, 2002, and January 8, 2003.

- $20,000.00 received on or about June 3, 2003 (cleared on June 9, 2003) in satisfaction of Defendant/Appellant's invoices dated January 8, January 9, 2003, January 15, 2003, January 16, 2003, January 21, 2003, and January 22, 2003.

The number of days between the invoice date and the date the check was deducted from TMI's bank account ranged from 138 days to 182 days. Despite the extended in time between the invoice dates and clearing dates of the checks, it was a regular practice for Defendant/Appellant to conduct business with TMI in this manner.[1] TMI had a longstanding relationship with Defendant/Appellant. In fact, TMI became a customer of Defendant/Appellant in 1986 and remained a customer for 17 years.[2]

In the 1990's, with the passage of NAFTA, Defendant/Appellant saw much of its business decline as the majority of the sewing business went to Mexico or Central America.[3] Defendant/Appellant's profits dwindled and it teetered on bankruptcy.[4] However, because of Defendant/Appellant's long-standing, established relationship with TMI, it was able to survive.[5] Defendant/Appellant relied on TMI's business to keep its facilities running and its people working.[6] Based on Defendant/Appellant's relationship with TMI, and its reliance on TMI's business, Defendant/Appellant gave TMI greater

---

[1] See affidavit of Terry Price (hereinafter "Price Affidavit") at ¶3; see also transcript of Terry Price (hereinafter "Price Tr.") at pgs. 35-41.
[2] Id.; Price Tr. at pg. 31.
[3] Price Tr. at pg. 39.
[4] Id.
[5] Id. at 40.
[6] Id.

4

latitude with regard to paying invoices.[7] Defendant/Appellant regularly accepted payments from TMI for goods shipped and invoiced more than 60 days previous.[8] Each of Defendant/Appellant's invoices provided for the accrual of interest on payments made beyond thirty days after receipt.[9] TMI received no special treatment in this regard, and Defendant/Appellant charged the stated interest on TMI's regularly sent payments on past invoices, which the latter paid.[10] This practice extended up until July 2003.[11] An aging report[12] made two years prior to TMI's filing (from July 7, 2001, to June 19, 2002) evidences the typical payment pattern between Defendant/Appellant and TMI.[13] Defendant/Appellant habitually received payments far beyond the thirty day invoice period, for example: 321 days after invoice; 286 days after invoice; 193 days after invoice; 172 days after invoice; 109 days after invoice; and, the very best being, 98 days after invoice.[14] Thus, Defendant/Appellant's receipt of payment for older invoices within the 90-days preceding TMI's filing cannot be classified as unusual.

---

[7] Id.
[8] Price Affidavit at ¶3.
[9] Price Tr. at pgs. 36-37.
[10] Id.
[11] Id. at pg. 41
[12] An "aging report" illustrates payments on particular invoices within a specified period of time.
[13] Price Tr. at pg. 37
[14] Id.

## ARGUMENT AND CITATIONS OF AUTHORITY

Trustee/Appellee correctly asserts that for purposes of 11 U.S.C. §547 the date of transfer to determine a preferential payment is deemed to be the date that the check is honored by the debtor's bank. Barnhill v. Johnson, 503 U.S. 393, 401 (1992). As the above referenced checks to Defendant/Appellant were honored by TMI's bank within the ninety (90) days preceding the latter's bankruptcy, without the applicability of some exception, they would be preference payments and subject to the Trustee's avoidance powers under 11 U.S.C. §547(b). However, it is respectfully argued before this Honorable Court that the payments at issue were made in the ordinary course of business between Debtor and Defendant/Appellant, and therefore, are immune from avoidance per 11 U.S.C. § 547(c)(2).

> Under 11 U.S.C. §547(c), a trustee may not avoid a transfer
>
> (2) to the extent that such a transfer was—
>   (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>   (B) made in the ordinary course of business or financial affairs of the transferee; and
>   (C) made according to ordinary business terms.

The purpose of the ordinary course of business defense is "'to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy.'" In re Craig Oil Co., 785 F.2d 1563, 1566 (11th Cir. 1986) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 373-74 (1977)). The ordinary course of business is a defense to preferential categorization which the creditor bears the burden of proving. See 11 U.S.C. § 547(g); In re Issac Leaseco, Inc., 389 F.3d

6

1205, 1210 (11th Cir. 2004). This burden consists of three elements. See 11 U.S.C. §547(c)(2).

The first two elements of 11 U.S.C. §547(c)(2) pertain to the conduct of the parties toward one another; however, the third element involves a broader inquiry. In re A.W. & Assoc., 136 F.3d 1439, 1442-43 (11th Cir. 1998). The third element requires the creditor to show that the disputed transaction was made both in the course of regular dealings between the parties and in accordance with the standards of the relevant industry. Id. (citing In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir. 1993)). However, "[i]ndustry standards do not serve as a litmus test by which the legitimacy of a transfer is adjudged, but [instead] function as a general backdrop against which the specific transaction is at issue is evaluated." A.W. & Assoc., 136 F.3d at 1443. Thus, "only dealings so idiosyncratic as to fall outside [the broad range of 'ordinary business terms' in a relevant industry] should be deemed extraordinary and therefore outside the scope of subsection C." Id.

In applying the facts of this case, the first two elements of § 547(c)(2) are clearly met. First, as to § 547(c)(2)(A), there is no dispute that TMI incurred the debt in the ordinary course of business between it and Defendant/Appellant. Defendant/Appellant received the six (6) payments at issue in satisfaction of invoices from past deliveries by Defendant/Appellant.[15] Second, as to § 547(c)(2)(B), despite the fact that the payments at issue were made outside of the 30-day payment period indicated on the related invoice, it was the Defendant/Appellant's regular practice to accept payment from TMI for goods shipped and invoiced more than 60 days previous.[16] Since the 1990's, and the passage of

---

[15] Price Affidavit at ¶3(c).
[16] Id. at ¶3(b).

7

NAFTA, Defendant/Appellant heavily relied on TMI's business to stay productive.[17] Consequently, Defendant/Appellant granted TMI more leeway as far as the payment aspect of its business relationship with TMI.[18]  Moreover, it was TMI's regular practice to pay Defendant/Appellant in this delayed manner.[19]  Therefore, the six (6) payments were made in the ordinary course of the business relationship between TMI and Defendant/Appellant.

Turning to the third element, the foregoing paragraph demonstrated that the transactions at issue were made in the course of regular dealings between the parties. Nevertheless, the Eleventh Circuit has stated that an examination of industry standards is required, otherwise § 547 (c)(2)(C) would be deprived of any independent meaning. Id. at 1442. In this case, the relevant industry is the textile industry; specifically, the Apparel segment thereof.  Trustee/Plaintiff's expert analyzed the actual trade receivables history for the Apparel segment of the textile industry during the second quarter of 2003.[20]  His analysis showed the median number of days of sales outstanding to be 55 days.[21] Trustee/Plaintiff will likely argue that the foregoing analysis reveals a shorter median time span than between the outstanding invoices and payments at issue. Defendant/Appellant neither proposes that this Court ignore the command of the Eleventh Circuit nor the analysis offered by Trustee/Plaintiff, but instead that this Court consider the industry analysis for what it is—"a general backdrop against which the specific transaction[s] at issue [are] evaluated." Id. at 1443.  With that industry median as a "backdrop", attention should be brought to seventeen-year business relationship that

---

[17] Price Tr. at pg. 30.
[18] Id. at pg. 40.
[19] See Id. at pgs. 40-41.
[20] Summary Report of AEA Group, LLC at 3.
[21] Id. (median for companies reporting to the Credit Research Foundation).

8

existed between TMI and Defendant/Appellant (beginning in 1986).[22] Further, the catalyst to the formation of the unique relationship between these business entities should be highlighted—Defendant/Appellant's financial straits in the 1990's caused it to rely more and more on TMI's business and, therefore, a policy of giving TMI greater latitude with regard to paying on past invoices was firmly established.[23] "[T]he more established the debtor's relationship with a creditor, the more the parties will be permitted to deviate from industry standards." In re L. Bee Furniture Co., 227 B.R. 902, 906 (D.C.M.D. Fl. 1998). Indeed, the United States Court of Appeals for the Third Circuit in In re Moulded Acoustical Prods. went so far as to conclude the following:

> The more cemented (as measured by its duration) the pre-insolvency relationship between the debtor and the creditor, the more the creditor will be allowed to vary its credit terms from the industry norm yet remain within the safe harbor of §547(c)(2). The likelihood of unfair overreaching by a creditor (to the disadvantage of other creditors) is reduced if the parties sustained the same relationship for a substantial time frame prior to the debtor's insolvency. 18 F.3d 217, 225 (3d. Cir. 1994).

Defendant/Appellant had a well established pre-insolvency relationship with TMI. During their seventeen-year relationship, Defendant/Appellant regularly accepted payments from TMI for goods shipped and invoiced more than 60 days previous.[24] Based on this "cemented" relationship, Defendant/Appellant should be allowed to broaden its credit terms from those of the relevant industry. The six (6) payments by TMI to Defendant/Appellant during the ninety (90) days preceding TMI's filing were not so extreme, and so out of character with the long standing relationship between the parties, as to be characterized as preferential and unfairly depriving other creditors.

---

[22] Price Affidavit at ¶3(a).
[23] Price Tr. at pgs. 39-41.
[24] Price Affidavit at ¶3

9

Appellee will no doubt argue to this Court the January 9, 2003, letter from Defendant/Appellant to TMI obviates the ordinary course of business defense; but the Defendant/Appellant submits this one demand (which was only complied with by TMI for a short period of time[25]) should not taint the later payments received within the 90 day preference period tendered in the same manner as over the past ten plus (10+) years while the Defendant/Appellant continued in good faith to ship goods to TMI ultimately creating an outstanding, unsecured balance of $115,482.52.

---

[25] Price Tr. at pgs. 43-44.

## CONCLUSION

Based upon the above cited authority and the affidavit and testimony of Mr. Price, as President of Defendant/Appellant, it is respectfully submitted to this Court that the six (6) payments at issue are not preferential payments because the three elements of the "ordinary course of business" exception (11 U.S.C. § 547(c)(2)) have been satisfied. First, Defendant/Appellant shipped goods to TMI; and the shipments were memorialized by invoices which were later paid. Thus, there were payments of debts incurred in the ordinary course of business between TMI and Defendant/Appellant. Second, during the ninety (90) days preceding TMI's filing of bankruptcy, TMI made six (6) payments on past invoices. It was Defendant/Appellant's regular practice to accept payment from TMI for goods shipped and invoiced more than 60 days previous. Moreover, it was TMI's usual procedure to pay Defendant/Appellant for the latter's oldest invoices. Therefore, the transfers at issue were made in the ordinary course of business between the two entities. Third, and finally, because of the seventeen (17) year relationship between the parties, and both parties' respective practice of paying past invoices and accepting payments thereof, Defendant/Appellant, as creditor, should be allowed to broaden the industry standard. The six (6) payments were not so out of character from the business practice between the parties as to be classified as preferential. Hence, the Defendant/Appellant respectfully suggests the holding of the Bankruptcy Court is due to be reversed.

Respectfully submitted this 24th day of August, 2005.

ESPY, METCALF & POSTON, P.C.

                        /s/ C.H. Espy, Jr.
                        _____
                        C.H. Espy, Jr. (ASB-3696-578C)
                        ATTORNEY FOR DEFENDANT/APPELLANT
                        P.O. Drawer 6504
                        Dothan, Alabama 36302-6504
                        (334) 793-6288

Certificate of Service

    I, C.H. Espy, Jr., do hereby certify I have this date served a copy of the above and foregoing upon the following parties by placing a copy of same to them in the U.S. Mail, postage prepaid, on this 24th day of August, 2005.

Ms. Catherine E. Lasky
PHELPS DUNBAR, LLP
Attorney for Debtor/Appellee
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534

                                                  C.H. Espy, Jr.

13