## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO. 03-32063-WRS** |
| **COMPANY, INC.** | ) | |
| | ) | **CHAPTER 7** |
| **Debtor** | ) | |

|  |  |  |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CASE NO. 03-32213-WRS** |
| **TERRY UNIFORM** | ) | |
| **COMPANY, LLC,** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | |

|  |  |  |
|---|---|---|
| | ) | |
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING COMPANY, INC.** | ) | |
| **AND TERRY UNIFORM** | ) | |
| **COMPANY, LLC,** | ) | **CIVIL ACTION NO.** |
| **Appellee,** | ) | |
| | ) | **2:05cv730-T** |
| **VERSUS** | ) | |
| | ) | |
| **BONIFAY MANUFACTURING, INC.,** | ) | |
| **Appellant.** | ) | |

**Appeal from the United States Bankruptcy Court for the Middle District of Alabama**
**Adversary Proceeding No.: 04-03072-WRS**

### BRIEF OF APPELLEE, J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC

Brent B. Barriere, T.A.  (La. Bar No. 2818)
Catherine E. Lasky (La. Bar No. 28652)
PHELPS DUNBAR LLP
P.O. Box 4412
Baton Rouge, LA 70821-4412
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197
(*Temporary Contact Information*)

NO.99559094.1

## <u>TABLE OF CONTENTS</u>

Table of Authorities………………………………………………………………..……(ii)

Statement of Issue Presented and Applicable Standard of Review……………………….....1

Statement of the Facts…………………………………………………………………...2

Argument………………………………………………………………………………3

Conclusion……………………………………………………………………….....6

Certificate of Service………………………………………………………………..7

Exhibit "A"

Exhibit "B"

## TABLE OF AUTHORITIES

### CASES

*Fiber Lite Corp. v. Molded Acoustical Products, Inc.*
    (*In re Molded Acoustical Products, Inc.*), 18 F.3d 217 (3d Cir. 1993).....................5,6

*In re A.W. & Assoc., Inc.*, 136 F.3d 1439 (11th Cir. 1998)...........................................4

*In re C.J. Spirits, Inc.*, 238 B.R. 889 (Bankr. M.D.Fla. 1999)......................................3

*In re Garfinkle*, 672 F.2d 1340 (11th Cir. 1982).....................................................1

*In re Greenbrook Carpet Co., Inc.*, 722 F.2d 659 (11th Cir. 1984)....................................1

*In re Jet Florida Systems, Inc.*, 861 F.2d 1555 (11th Cir. 1988)...................................3,4

### STATUTES

11 U.S.C. § 547.........................................................................................1

11 U.S.C. § 547(b)......................................................................................1

11 U.S.C. § 547(c)(1)...................................................................................1

11 U.S.C. § 547(c)(2)...............................................................................1,3,5,6

11 U.S.C. § 547(g)......................................................................................3

28 U.S.C. § 157(b)......................................................................................1

28 U.S.C. § 157(b)(2)(F)................................................................................1

### RULES

Bankruptcy Rule 8013....................................................................................2

## STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF REVIEW

Defendant-Appellant, Bonifay Manufacturing, Inc. ("Bonifay") appeals the May 9, 2005, judgment of the Bankruptcy Court in favor of Plaintiff-Appellee, J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC ("Trustee") avoiding payments totaling $107,713.15 as preferences within the meaning of 11 U.S.C. § 547. Actions seeking to avoid preferences are core matters within the meaning of 28 U.S.C. § 157(b)(2)(F). Accordingly, the Bankruptcy Court's judgment and related decision is a final judgment within the meaning of 28 U.S.C. § 157(b). The Bankruptcy Court held, and Bonifay failed to dispute at trial, that the six payments made to Bonifay by Terry Manufacturing during the preference period satisfied all the elements of 11 U.S.C. § 547(b). Further, the Court held that Bonifay did not sustain its burden of proof on its two affirmative defenses- contemporaneous exchange for new value pursuant to 11 U.S.C. § 547(c)(1) and ordinary course of business pursuant to 11 U.S.C. § 547(c)(2). Bonifay now seeks to have this Court reverse the Bankruptcy Court and hold that the preference payments were in fact made in the ordinary course of business between Bonifay and Terry Manufacturing.

Bonifay failed to inform this Court of the highly deferential standard of review for this appeal of the Bankruptcy Court's ruling on a core matter. It is well-settled in the Eleventh Circuit that an appellate court "must accept the bankruptcy court's findings unless they are clearly erroneous." *See In re Greenbrook Carpet Co., Inc.*, 722 F.2d 659, 660-61 (11th Cir. 1984)(*citing In re Garfinkle*, 672 F.2d 1340 (11th Cir. 1982)). The test "is not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings." *In re Garfinkle*, 672 F.2d 1340, 1344 (11th Cir. 1982)(*quoting Highland Village Bank v. Bardwell*, 610 F.2d 228, 230

(5th Cir. 1980)). In addition, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013.

## STATEMENT OF FACTS

The Trustee does not dispute Bonifay's statement of the facts in so far as it details the payments received by Bonifay from Terry Manufacturing during the ninety day preference period and the invoices associated with those payments. The invoices sent by Bonifay to Terry Manufacturing called for payment within thirty days with finance charges due and payable after thirty days. *See* Transcript of April 18, 2005 Proceedings at 18. Terry Manufacturing paid Bonifay's invoices "consistently late compared to their terms" and paid numerous finance charges. *Id.* at 17. In fact, during the preference period, three payments were made towards finance charges. *Id.* at 18.

The business relationship between Bonifay and Terry Manufacturing changed drastically in January of 2003 when Bonifay demanded substantial weekly payments so that Terry Manufacturing could get "current" on its account with Bonifay. *See* January 9, 2003 Letter from Terry Price to Roy Terry, Plaintiff's Exhibit 3 and attached hereto for Court's reference as Exhibit "A". That letter demanded that Terry Manufacturing make weekly payments to Bonifay in the amount of $21,500.00 and believed that Terry Manufacturing "could get 'current' with Bonifay by Mid-May of 2003." *Id.* During the ninety days preceding the Chapter 11 filing on July 7, 2003, Bonifay received both the weekly $21,500 payments, payments in various amounts in satisfaction of finance charges and payments on long past due invoices. As the Trustee testified at trial, "there really was no typical practice [of payment of invoices between Bonifay and Terry Manufacturing] during the time frame approaching the ninety-day period as well as

during the ninety-day period." *See* Transcript of April 18, 2005 Proceedings at 21.

In addition, the payment terms between Bonifay and Terry Manufacturing were not consistent with the standards in the textile industry. The Trustee was permitted to testify as an expert both as to the payment history between Bonifay and Terry Manufacturing and what is the norm for in finished goods sector of the textile industry. According to data compiled by the Risk Management Association, an organization of financial institutions, payments on account for the textile industry were made in 39 to 41 days. *See* Transcript of April 18, 2005 Proceedings at 22, 23; Summary Report of AEA Group, LLC at 3, Plaintiff's Exhibit 2 and attached hereto for the Court's reference as Exhibit "B". According to a similar organization, the Credit Research Foundation, the typical aging for accounts in the textile industry was 55 days. *See* Transcript of April 18, 2005 Proceedings at 24; Summary Report of AEA Group, LLC at 3. As Bonifay admitted in its brief, the delay in payment by Terry Manufacturing to Bonifay during the preference period was 138 to 182 days, far in excess of industry norms. *See* Appellant's Brief at 4. Based on the inconsistent and abnormal relationship between Terry Manufacturing and Bonifay, Bonifay cannot prevail on its ordinary course of business defense.

## ARGUMENT

The Bankruptcy Court's finding that Bonifay did not sustain its burden to prove by a preponderance of the evidence the statutory defense provided by 11 U.S.C. § 547(c)(2) was not clearly erroneous. *See* 11 U.S.C. § 547(g); *In re Jet Florida Systems, Inc.*, 861 F.2d 1555, 1560 (11th Cir. 1988); *In re C.J. Spirits, Inc.*, 238 B.R. 889, 892 (Bankr. M.D.Fla. 1999). Specifically, the Bankruptcy Court found that the payments from Terry Manufacturing to Bonifay during the preference period did not satisfy the "last element of § 547(c)(2)"-- that the transfers made by Terry Manufacturing to Bonifay were "made according to ordinary business

terms." May 9, 2005, Memorandum Decision at 8. Not only did the Bankruptcy Court find that the transfers were not made according to the ordinary business terms between Terry Manufacturing and Bonifay, but also that the transfers were not made according to the ordinary business terms in the textile industry. Bonifay has failed to show this Court that the Bankruptcy Court's decision was clearly erroneous.

"What the ordinary course of business is between a debtor and a creditor is essentially a factual question." *Jet Florida Systems*, 861 F.2d at 1560. In addition to the history of the individual relationship between Terry Manufacturing and Bonifay, the ordinary course of business analysis also requires an examination of "industry standards" in the textile industry. *In re A.W. & Assoc., Inc.*, 136 F.3d 1439, 1442-43 (11th Cir. 1998). As the Bankruptcy Court recognized, Bonifay did not offer any evidence at trial regarding the "ordinary course of business" in the textile industry. The Trustee testified at trial about the range for payments in the textile industry according to data collected by the Risk Management Association and the Credit Research Foundation. *See* Memorandum Decision at 7. As the Bankruptcy Court explained in its decision, the typical range according to the Risk Management Association was between 39 to 41 days and in the range of 55 days for the Creditor Research Foundation. Testifying as an expert, the Trustee further explained that the range of payment between Bonifay and Terry Manufacturing was 138 days to 182 days, more than three times the typical industry range. *See* Exhibit "B" at 3. Bonifay did not offer any information regarding industry standards to rebut the Trustee's findings either at trial or in its appellate brief.

At trial and in pleadings before this Court, Bonifay relies heavily upon the Third Circuit Court of Appeals' decision in *In re Molded Acoustical Products, Inc.* in an attempt to make its case that the long-standing relationship between Bonifay and Terry Manufacturing should trump

the industry standard analysis for the purposes of 11 U.S.C. § 547(c)(2). *Fiber Lite Corp. v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.)*, 18 F.3d 217 (3d Cir. 1993). However, the *Acoustical Products* court recognized limits to the weight given to a long-standing relationship.

> Even when the debtor/creditor relationship has been well-settled prior to the debtor's insolvency, should the creditor be unable to fit its terms within the sliding-scale window surrounding the established industry's norm, the preferential transfer will not be deemed unavoidable by virtue of § 547(c)(2)...That is to say, the parties' longstanding credit terms, although consistent as between them, may depart so grossly from what has been established as the pertinent industry's norms that they cannot be seriously considered usual and equitable with respect to the other creditors.

*Id.* at 226.

The Bankruptcy Court "acknowledge[ed] Bonifay's argument that in unique situations where the business relationship has solidified long before the occurrence of the debtor's bankruptcy, the Court should 'pause and consider carefully before further impairing a creditor whose confident, consistent, ordinary extension of trade credit has given the straitened debtor a fighting chance of sidestepping bankruptcy and continuing in business.'" Memorandum Decision at 7-8 (citing *In re Molded Acoustical Products, Inc.*, 18 F.3d 217, 225 (3d Cir. 1994)).

It was not clearly erroneous for the Bankruptcy Court to conclude that although Bonifay and Terry Manufacturing had a long-standing relationship, payment delays of 138 to 182 days, which were more than 100 days greater than industry standards, departed "so grossly" from the industry norms such that the requirements for § 547(c)(2) were not met. The Bankruptcy Court's finding is further supported by the drastic change in the relationship between Terry Manufacturing and Bonifay that occurred in January of 2003.

The January 9, 2003 letter from Terry Price of Bonifay Manufacturing to Roy Terry of Terry Manufacturing further undermines Bonifay's ordinary course of business defense. *See*

Exhibit "A". That letter demanded that Terry Manufacturing "get 'current' with Bonifay by Mid-May of 2003 by paying $21,500 per week, each and every week, without fail. This allows Terry 4 months, and we can live with this. If for any reason a week were missed, then a double amount would need to be paid the next week to meet this timetable." *See* January 9, 2003 Letter at 2 (emphasis in original).

The weekly payments of $21,500.00 that Bonifay requested in January of 2003 were certainly not in the ordinary course for either Bonifay and Terry Manufacturing or the broader textile industry. As the Third Circuit held, part of the ordinary course analysis is "whether the relationship remained relatively stable leading into and throughout the insolvency period". *Acoustical Products*, 18 F.3d at 227. One of the factors in that case which led the Court to reject the defendant's ordinary course of business defense was that the defendant "tried to place the debtor on a 'payment plan,' an act which does not suggest business as usual within the industry but, quite to the contrary, resembles a calculated response to a deteriorating creditor-debtor relationship." *Id*. at 228. Similarly, Bonifay's attempt to put Terry Manufacturing on a payment plan of $21,500.00 per week prior to and through the preference period substantiates the Bankruptcy Court's holding that the ordinary course of business defense is inapplicable.

## CONCLUSION

In rendering judgment in favor of the Trustee, the Bankruptcy Court properly considered all of the factors relevant to the ordinary course of business defense provided by 11 U.S.C. § 547(c)(2), including the industry standards, the length of the parties' business relationship, and the relevant factors of the Bonifay and Terry Manufacturing relationship. Because the Bankruptcy Court's judgment is grounded in fact and law and was not "clearly erroneous," this Court should affirm the Bankruptcy Court and dismiss Bonifay Manufacturing's appeal.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:    <u>/s/ Catherine E. Lasky</u>
        Brent B. Barriere, T.A. (La. Bar No. 2818)
        Catherine E. Lasky (La. Bar No. 28652)
        P.O. Box 4412
        Baton Rouge, LA 70821-4412
        Telephone: (225) 346-0285
        Facsimile: (225) 381-9197
        (*Temporary Contact Information*)

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE FOR TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

## CERTIFICATE OF SERVICE

I certify that, on this 22nd day of September, 2005, by United States mail, properly addressed and postage pre-paid to the following persons:

Collier H. Espy, Jr.
Espy, Metcalf & Poston, P.C.
P.O. Drawer 6504
Dothan, Alabama 36302-6504

                                  <u>/s/ Catherine E. Lasky</u>