Roy Terry  
Terry Manufacturing Company, Inc.  
P.O. Box 648  
Roanoke, AL 36274

Jan. 9, 2003

Dear Roy:

    Our fiscal year at Bonifay Manufacturing, Inc. ended on October 31, 2002. This past year was the worst year, financially, in the history of our company. As a matter of fact, this past year was the <u>only year</u>, in the 23 years we have existed, that our company ended the year with a loss.

    There are a lot of reasons for our worsening financial results, with the major reason being our greatly reduced volume due to the continued movement of production out of the US, and to some degree, the general economic situation.

    <u>Nevertheless, we have survived</u>. And, we plan on continuing to survive and providing our customers with the same quality and dependable, on-time delivery that you have received in the past.

    However, like any business that intends to survive, we have been forced to take a very close look at our costs and expenses and evaluate the problem areas.

    We have also found it to be an absolute necessity that we get and keep all our accounts receivables "current".

    As you know, when you lose money for a period of time, its very obvious that in order to meet payrolls and pay bills, you only have 2 options: 1) Use money from previous earnings or 2) borrow the money.

    As long as we have previous earnings in reserve that we can draw from, borrowing is not an option for us. Plain and simple, we just do not intend to borrow money to operate when we have money owed to us that is "past due".

    I have gone back through end of the month statements for Terry Manufacturing Co. for the past 7 years (through January 1996). During this period, there was not a single month where Terry Manufacturing was 100% current (with no invoices past due). The most recent best month end, as far as accounts receivable from Terry was concerned, was 4/30/01 when there was a total of $52,374.01 of invoices 1-30 days past due and none over 31 days past due.

    In our present situation, we just cannot carry accounts receivables like we have in the past.

    Most of our customers are "current" and stay "current", but we need <u>all</u> our customers to be "current".

Bonifay 0630

Exhibit "A"

While I would like for this to be accomplished tomorrow, I realize you might need some amount of time in order to get 100% "current" with us. But in order for it to happen, we need a plan and the plan must be followed religiously.

I have worked on the numbers, and based on the amount Terry owes Bonifay at present, and a weekly average invoicing of 250 dozens, Terry could get "current" with Bonifay by Mid-May of 2003 by paying $21,500 per week, <u>each and every week, without fail</u>. This allows Terry 4 months, and we can live with this.

If for any reason a week were missed, then a double amount would need to be paid the next week to meet this timetable.

Roy, as we have discussed in the past, we cannot continue to just keep rolling along getting some here and some there and not getting anything for several weeks in a row. (Case in point being the last check we received was dated 12/19/02).

Things are a lot different for us now than they have been in the past, and our survival depends on <u>getting and keeping</u> all our accounts receivables "current".

I would appreciate your immediate attention to this matter, and your response as soon as possible.

Sincerely,

Terry Price

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:  Case No. 03-32063

TERRY MANUFACTURING  Chapter 7
COMPANY, INC.

    Debtor.

In re:  Case No. 03-32213

TERRY UNIFORM  Chapter 7
COMPANY, LLC,
    Debtor.

J. LESTER ALEXANDER III,
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY,
LLC
    Plaintiff,  Adv. Pro. No. 04-3072-WRS

v.

BONIFAY MANUFACTURING INC.,

    Defendant.


**Summary Report of AEA Group, LLC**

By: J. Lester Alexander, III

As of February 24, 2005

Exhibit "B"

Summary Report of AEA Group, LLC

By: J. Lester Alexander, III

Terry Manufacturing Company, Inc.,
Terry Uniform Company, LLC,
J. Lester Alexander, III, Trustee
v.
Bonifay Manufacturing Inc.

As of February 24, 2005

This letter and the attached appendices are my report of findings to date in the above referenced matter.

I am a certified public accountant and have approximately twenty-six years of professional experience. I am a certified fraud examiner and I hold an accounting degree from the University of Alabama. As a certified public accountant, I have experience in auditing which has required the evaluation of accounts receivable aging and the collection of accounts receivable, both in terms of the history of the client and the norms for the relevant industry. I am the duly appointed and acting Trustee of Terry Manufacturing Company, Inc. ("TMC") and my compensation as Trustee is subject to determination by the Court. I am the Managing Principal of AEA Group, LLC. I was assisted by members of my firm who worked under my direction in performing this analysis. Billing rates for AEA Group for this engagement range from $185 to $55 per hour. My resume, including my testimony experience, is attached as an appendix to this report.

**SCOPE**

As to the above-referenced matter, I am presented as expert witness to report my findings regarding the solvency of TMC; the nature and relationship of payments by TMC to Bonifay Manufacturing, Inc. ("Bonifay") with respect to the TMC bankruptcy; whether payments to Bonifay were or were not in the ordinary course of business; and whether the timing of TMC's payments to Bonifay were or were not typical of TMC's industry classification. I utilized the business records of TMC; to the extent they exist or could be recreated. Since July, 2003, I or people under my direction have reconstructed the records pertaining to accounts payable of TMC. In addition, I utilized certain case pleadings, bank records, business and financial records produced by Bonifay, industry research and other information listed in an appendix to this report.

**FINDINGS AND OPINIONS**

It is my understanding that pursuant to 11 U.S.C. § 547, TMC is presumed to have been insolvent during the 90 days preceding its Chapter 11 filing on July 7, 2003. As a result of my analysis, I have determined that TMC was insolvent throughout the ninety days preceding its Chapter 11 filing with the amount of Terry Manufacturing's liabilities exceeding its assets by an amount in excess of $30,000,000. In addition, if all of the proofs of claim filed in this case

2

accurately state the amount of indebtedness owed by TMC (and such proof of claims have been filed under penalty of perjury), TMC's liabilities exceeded the value of its assets by more than $60,000,000.

TMC made 6 payments to Bonifay totaling $107,713.15 during the 90 day preference period preceding its Chapter 11 filing. Each payment to Bonifay was in satisfaction of an antecedent debt. The payments made to Bonifay during the preference period permitted Bonifay to receive more than it would have received in a liquidation assuming the transfer had not been made. Had Bonifay not received the payments and instead made an additional unsecured claim for these amounts, it is certain that Bonifay would not receive a distribution equal to the challenged payments.

Furthermore the payments made to Bonifay were not made in the ordinary course of business as evidenced by the following:

- All payments were outside of the terms indicated on the related invoice.

- The number of days between the related invoice date and the date the check cleared the bank account of TMC ranged from 138 days to 182 days.

- Analysis of actual payment history data for the textile industry shows that payments on account were made in 39 to 41 days (median of companies reporting to Risk Management Association for the year ended March 31, 2003 and 2004, respectively).

- Analysis of actual trade receivables history for the Apparel and Other Finished Products segment of the textile industry during the second quarter of 2003 shows the median number of days of sales outstanding were 55 days (median for companies reporting to Credit Research Foundation.)

## OTHER CONSIDERATIONS

My report is issued in accordance with the Management Consulting Standards of the American Institute of Certified Public Accountants. This report is to be used solely in connection with proceedings related to the above referenced matter and should not be used for any other purpose. Outside distribution of this report to others is not permitted without the written consent of AEA Group, LLC. The information in this report is based on information learned through February 24, 2005. I reserve the right to consider any additional information that is presented to me. Further, I reserve the right to supplement and amend my opinions for information learned up to and throughout trial.

Very truly yours,

By: _____
J. Lester Alexander, III, CPA
Chapter 7 Trustee
Terry Manufacturing Co. Inc and Terry Uniform, LLC

3

## Index of Appendices

Appendix A – Resume and testimony experience

Appendix B – Documents considered

Appendix C – Payments

# Appendix A - Resume of J. Lester Alexander, III

**Professional Experience**

Mr. Alexander is the President and Managing Principal of AEA Group LLC, a consulting firm specializing in accounting, economic and appraisal consulting. Mr. Alexander has approximately twenty-six years of experience providing audit and advisory services to a wide range of entities, stakeholders and governing boards. As a former PricewaterhouseCoopers LLP Partner, Mr. Alexander has provided audit and advisory services to various types of companies including financial services, manufacturing, healthcare, technology, real estate, contracting, and retail companies. In addition Mr. Alexander has provided accounting, economic and appraisal consulting services to clients in connection with investment transactions, public securities offerings, private placement security offerings and debt offerings of various types. He holds a Bachelor of Science in Accounting from the University of Alabama and is a Certified Public Accountant and a Certified Fraud Examiner.

Mr. Alexander has provided services and, from time to time, expert testimony in various courts and in situations involving alternative dispute resolution. He has provided services in connection with contract disputes, security issues, insurance coverage issues, non-compete agreements, lost profits, business valuation and various other matters. He has testified in connection with class action certification hearings and class action fairness hearings. Mr. Alexander's experience includes testimony about customary practices and standards of care in auditing, operating and controlling business activities.

Mr. Alexander is experienced in the areas of business valuation, acquisition due diligence and cost accounting matters. He has evaluated the value of ownership interests in businesses in connection with acquisitions, disposals and disputes. He has performed suitability studies in connection with investment transactions in a wide range of financial instruments. In addition, he has performed incremental cost studies, contribution margin studies and other applications of cost accounting for clients in connection with new products, acquisitions, patent valuations and evaluation of trademarks. This experience includes making projections of incremental revenues and costs in connection with profitability analysis of proposed business ventures, new products and other profitability analysis for companies.

Mr. Alexander has advised governing bodies, committees and members on their role in overseeing the activities of companies and senior management. His clients have included publicly-traded companies, privately-held companies, governmental entities and tax-exempt companies. He has advised governing bodies overseeing companies in the start-up/growth, mature and restructuring phases of operational development. He has performed these services for governing bodies overseeing companies operating in the manufacturing, healthcare, technology, financial services, real estate, contracting, and retail industries.

6

## Professional/Business/Community Affiliations

Lecturer on Financial Damages – 2004 Cumberland Law School Continuing Education Seminar, Birmingham Alabama

Lecturer on Financial and Business Fraud Schemes - 2004 Corporate Counsel Seminar, Birmingham Alabama

Lecturer on Detecting Fraud Schemes – Fall Bankruptcy Seminar, Fall 2003, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Accountant's View of Sarbanes Oxley – 2003 Seminar, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer on Online Fraud Prevention – 2002 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Forensic Computer Investigation – 2001 Discovery Seminar, Alabama Bar Continuing Education Series, Birmingham , Alabama

Lecturer on Online Business & Financial Research Methods – 2001 Federation of Insurance & Corporate Counsel's Internet University, Napa, California

Lecturer on Identifying and Investigating Fraud – 2001 Institute of Management Accountants, Birmingham, Alabama

Lecturer on Interpreting Financial Statements – 1999 National Judicial College, Gulf Shores, Alabama

Panelist on Consumer Fraud Issues – Coopers & Lybrand 1997 National Banking Conference, Washington, DC

Panelist on Business Strategy and Planning -NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls – Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Lecturer on Online Discovery – Defense Research Institute's 2001 Annual Meeting of Young Lawyers, Miami, Florida

Lecturer on Online Expert Witness Research – 2001 Louisiana State Bar 17th Summer School for Lawyers, Destin, Florida

7

## Professional/Business/Community Affiliations (continued)

Panelist on Business Strategy and Planning - NASA Technology Transfer Conference, Jackson, Mississippi

Lecturer on Business and Operational Controls – Institute of Management Accountants, Regional Conference, Gulf Shores, Alabama

Former National Practice Leader – Coopers & Lybrand's Financial Services Consumer Dispute Resolution Practice

Former Regional Service Line Leader – Coopers & Lybrand's Litigation Consulting Services Southern Region

Former Practice Leader for Dispute Analysis and Investigations - PricewaterhouseCoopers LLP, Birmingham, Alabama

Former Member - Banking and Insurance Industry Groups - PricewaterhouseCoopers LLP

American Institute of Certified Public Accountants

Alabama Society of Certified Public Accountants

Florida Institute of Certified Public Accountants

Association of Certified Fraud Examiners

Associate Member-American Bar Association

Commerce Executive Society – University of Alabama

Past Regional Director – Exchange Club of Alabama

Past President, Secretary, Director and Treasurer – Birmingham Breakfast Exchange Club

Past Administrative Board Member and Finance Committee Member – Canterbury United Methodist Church

8

## Testimony in Last Four Years

Vulcan Engineering, Inc. v. FATA Aluminum, Inc. (Federal Court, Michigan Eastern District)

Stockholders of Alalooska Inc. v. Performance Foods Group Companies (Arbitration, Atlanta, Georgia)

SouthTrust Bank v. ServiceMaster Diversified Health Services, L.P. (Federal District Court, Northern District of Alabama-Southern Division)

Sabrina Abernathy, et al. v. Monsanto Company, et al. (Circuit Court of Calhoun County, Alabama)

Central Parking System v. Alta Health and Life Insurance Company (Arbitration Hearing)

Susan K. Kearney v. Regions Bank (Federal Bankruptcy Court, Northern District of Alabama)

Union Healthcare, Inc. Chapter 11 Bankruptcy Proceeding (United States Bankruptcy Court, Southern District of Mississippi)

Hilb Rogal & Hamilton Company of Alabama v. Werner Beiersdoerfer (Alabama District Court, Jefferson County)

Intergraph Corporation v. Bentley Software Systems, Inc (Circuit Court of Madison County, Alabama)

UBS PaineWebber, Inc. v. Roger H. Aiken, Michael S. Boulos, Patrick G. McQuilling and A.G. Edwards & Sons, Inc., et al. (Arbitration Hearing)

Vanderbilt Integrated Providers/Nashville Healthcare Group, LLC and Vanderbilt University v. Prudential Insurance Company of America, Inc. and Prudential Healthcare Plan, Inc. (United States District Court, Middle District of Tennessee, Nashville)

Cothran Inc., James Cothran, Mary Lou Cothran v. Pali USA Ltd, Pali Linens, LLC, Loretto Pali & Richard Levine (Circuit Court of Baldwin County, Alabama)

HydroPower Inc v. Eaton Manufacturing (Circuit Court of Jefferson County Alabama)

The Utilities Board of the City of Daphne v. City of Spanish Fort et al (Federal District Court, Southern District of Alabama)

Compass Bank v. Blitz Media, Inc., et al. (United States District Court, The Northern District of Alabama, Southern Division)

Steward Machine v. White Oak, et al. (United States District Court, Connecticut)

Refrigerated Construction Services v. Coldmatic Building Systems, Inc, et al (United States District Court, Northern District of Alabama, Southern Division)

ABB Automation, Inc. v. DeVries, et al. (Circuit Court of Jefferson County)

Proliance, Inc. v. City of Huntsville (Circuit Court of Madison County, Alabama)

Steve Jamison, et al. v. Kerr-McGee Corporation, et al. (State Court, Mississippi)

Mason Dillard et al v Bellsouth Advertising et al (Circuit Court of Jefferson County, Alabama)

Vesta Insurance v. ACE/Cigna (Arbitration Hearing)

9

## Appendix B - Documents Considered

Proofs of claim and filings in the bankruptcy proceedings

Pleadings filed to date in adversary proceeding

Defendant account statements and correspondence

Documents produced to date by defendant

Bank statements and enclosures for TMC

Risk Management Association Financial Statement Studies 2004/2005

National Summary of Domestic Trade Receivables, Credit Research Foundation, Second Quarter 2003

Documents listed on the index of documents located at the Trustee's office which is available for inspection.

## Appendix C
## Terry Manufacturing Company, Inc., Bonifay Manufacturing Inc.
## Preference Payments

| Invoice No. | Invoice Date | Due Date | Date of Payment* | Check # | Invoice Amount** | Check Amount | Days from Invoice to Honor of Check | Days Past Due |
|---|---|---|---|---|---|---|---|---|
| 18788 | 10/17/2002 | 11/16/2002 | 4/9/2003 | 71427 | 2,490.90 | | 174 | 144 |
| 18790 | 10/22/2002 | 11/21/2002 | 4/9/2003 | 71427 | 3,453.85 | | 169 | 139 |
| 18791 | 10/23/2002 | 11/22/2002 | 4/9/2003 | 71427 | 2,718.30 | | 168 | 138 |
| 18794 | 10/24/2002 | 11/23/2002 | 4/9/2003 | 71427 | 8,385.37 | | 167 | 137 |
| 18797 | 10/28/2002 | 11/27/2002 | 4/9/2003 | 71427 | 2,969.60 | | 163 | 133 |
| 18799 | 10/29/2002 | 11/28/2002 | 4/9/2003 | 71427 | 2,739.98 | | 162 | 132 |
| | | | 4/9/2003 | 71427 | | 22,758.00 | | |
| 18799 | 10/29/2002 | 11/28/2002 | 4/29/2003 | 71631 | 315.95 | | 182 | 152 |
| 18803 | 10/31/2002 | 11/30/2002 | 4/29/2003 | 71631 | 4,486.91 | | 180 | 150 |
| 18810 | 11/7/2002 | 12/7/2002 | 4/29/2003 | 71631 | 5,340.78 | | 173 | 143 |
| 18815 | 11/8/2002 | 12/8/2002 | 4/29/2003 | 71631 | 4,668.30 | | 172 | 142 |
| 18820 | 11/13/2002 | 12/13/2002 | 4/29/2003 | 71631 | 4,342.95 | | 167 | 137 |
| 18822 | 11/18/2002 | 12/18/2002 | 4/29/2003 | 71631 | 3,534.65 | | 162 | 132 |
| | | | 4/29/2003 | 71631 | | 22,689.54 | | |
| 18822 | 11/18/2002 | 12/18/2002 | 5/9/2003 | 71790 | 347.78 | | 172 | 142 |
| 18825 | 11/20/2002 | 12/20/2002 | 5/9/2003 | 71790 | 4,981.34 | | 170 | 140 |
| 18831 | 11/21/2002 | 12/21/2002 | 5/9/2003 | 71790 | 2,983.36 | | 169 | 139 |
| 18835 | 12/5/2002 | 1/4/2003 | 5/9/2003 | 71790 | 2,402.44 | | 155 | 125 |
| | | | 5/9/2003 | 71790 | | 10,714.92 | | |
| 18835 | 12/5/2002 | 1/4/2003 | 5/15/2003 | 71829 | 5,214.15 | | 161 | 131 |
| 18838 | 12/9/2002 | 1/8/2003 | 5/15/2003 | 71829 | 4,229.91 | | 157 | 127 |
| 18839 | 12/10/2002 | 1/9/2003 | 5/15/2003 | 71829 | 3,454.21 | | 156 | 126 |
| 18842 | 12/12/2002 | 1/11/2003 | 5/15/2003 | 71829 | 4,272.99 | | 154 | 124 |
| 18847 | 12/17/2002 | 1/16/2003 | 5/15/2003 | 71829 | 3,836.43 | | 149 | 119 |
| | | | 5/15/2003 | 71829 | | 21,007.69 | | |
| 18847 | 12/17/2002 | 1/16/2003 | 5/30/2003 | 71998 | 681.51 | | 164 | 134 |
| 18848 | 12/18/2002 | 1/17/2003 | 5/30/2003 | 71998 | 6,681.74 | | 163 | 133 |
| 18853 | 1/8/2003 | 2/7/2003 | 5/30/2003 | 71998 | 3,179.75 | | 142 | 112 |
| | | | 5/30/2003 | 71998 | | 10,543.00 | | |
| 18853 | 1/8/2003 | 2/7/2003 | 6/9/2003 | 72142 | 35.54 | | 152 | 122 |
| 18854 | 1/8/2003 | 2/7/2003 | 6/9/2003 | 72142 | 3,807.39 | | 152 | 122 |
| 18857 | 1/9/2003 | 2/8/2003 | 6/9/2003 | 72142 | 239.49 | | 151 | 121 |
| 18861 | 1/15/2003 | 2/14/2003 | 6/9/2003 | 72142 | 4,482.04 | | 145 | 115 |

11

## Terry Manufacturing Company, Inc., Bonifay Manufacturing Inc.
### Preference Payments
### (Continued)

| Invoice No. | Invoice Date | Due Date | Date of Payment* | Check # | Invoice Amount | Check Amount | Days from Invoice to Honor of Check | Days Past Due |
|---|---|---|---|---|---|---|---|---|
| 18863 | 1/16/2003 | 2/15/2003 | 6/9/2003 | 72142 | 4,851.86 | | 144 | 114 |
| 18866 | 1/21/2003 | 2/20/2003 | 6/9/2003 | 72142 | 4,354.67 | | 139 | 109 |
| 18868 | 1/22/2003 | 2/21/2003 | 6/9/2003 | 72142 | 2,229.01 | | 138 | 108 |
| | | | 6/9/2003 | 72142 | | 20,000.00 | | |
| | | | | | 107,713.15 | 107,713.15 | | |

*Payment deemed to occur on the date check is honored.
**Allocation of payment to specific invoices according to Payment History by Bonifay Manufacturing Inc.